UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DION DAWSON,

       Plaintiff,                              Hon. Paul L. Maloney

v.                                                 Case No. 1:08 CV 363

DAVE BURNETT, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (Dkt. #13). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On November 7, 2006, Plaintiff requested to participate in the Buddhist "strict vegetarian" diet offered by the Michigan Department of Corrections (MDOC). *Id.* at ¶ 4. On December 5, 2006, Plaintiff was interviewed by a Chaplain concerning his request. *Id.* at ¶ 5. On December 11, 2006, Plaintiff received a memorandum authored by the warden informing him that his request to participate in the Buddhist "strict vegetarian" diet was denied "based on the appearance [that Plaintiff] was motivated by something other than [a] sincere desire to practice the Buddhist faith." *Id.*

On March 24, 2007, Plaintiff mailed a letter to Defendant Burnett inquiring why Burnett denied his request to participate in the strict vegetarian diet. *Id.* at ¶ 7. Burnett responded that "he would not revisit the decision" and that pursuant to MDOC policy, Plaintiff must wait one year before submitting another request to participate in the strict vegetarian diet. *Id.* In December 2007, Plaintiff again requested to participate in the strict vegetarian diet. *Id.* at ¶ 8. Pursuant to this request, Plaintiff was interviewed by Defendant Duby. Plaintiff subsequently received a memorandum, dated December 20, 2007, informing him that Defendant Burnett had denied his request. *Id.*

Plaintiff initiated the present action on April 18, 2008, alleging that Defendants Burnett and Duby,[1] by denying his requests to participate in the strict vegetarian diet, violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), as well as his First Amendment right to freely practice his religion. Plaintiff seeks declaratory, injunctive, and monetary relief. *Id.* at ¶ 16. Defendants now move for summary judgment. As detailed herein, the undersigned recommends that Defendants' motion be granted in part and denied in part.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient

---

[1] Plaintiff has sued Defendant Burnett in both his official and personal capacities. It is not entirely clear whether Plaintiff is suing Defendant Duby in his personal capacity only or both his official and personal capacity. The caption to Plaintiff's complaint suggests that Plaintiff is suing both Defendants in both their official and personal capacity. In the body of his complaint, however, Plaintiff indicates that he is suing Defendant Duby in his personal capacity only. Reading Plaintiff's complaint indulgently, the Court interprets Plaintiff's complaint as asserting claims against Defendant Duby in both his official and personal capacities.

opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of

the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

I.      **Claims for Injunctive and Declaratory Relief**

In response to Defendants' motion for summary judgment, Plaintiff asserts that his request to participate in the strict vegetarian diet has since been approved by Defendant Burnett's replacement. (Dkt. #21 at 3). The Court recommends, therefore, that Plaintiff's claims for injunctive and declaratory relief asserted against Defendants Burnett and Duby in their official capacity be dismissed as moot.

II.     **RLUIPA**

Plaintiff *appears* to seek monetary damages against Defendants Burnett and Duby in their personal capacity only. (Dkt. #1 at ¶ 16). In response to Plaintiff's complaint, however, Defendants cite to authority which concerns the ability to recover monetary damages under RLUIPA against a state official in his *official* capacity. (Dkt. #25 at 2 n.2). This suggests that Defendants have perhaps interpreted Plaintiff's complaint as also asserting claims for monetary damages against them in their official capacity. In the event that Plaintiff's complaint is interpreted as seeking monetary damages

against Defendants in both their personal and official capacities, the Court will examine Plaintiff's ability to obtain damages under RLUIPA against Defendants in both their official and personal capacity.

### A. Official Capacity

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000). Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court.[2] *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court notes that the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).

An action asserted against a State official in his official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). As such, "the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Id.* In a supplemental pleading, Defendants suggest that Plaintiff's official capacity RLUIPA claims for

---

[2] The exception to this general rule concerns actions for prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

monetary damages must be dismissed because the State of Michigan has not waived its sovereign immunity as to claims for monetary damages under RLUIPA.  (Dkt. #25).

Article I of the United States Constitution contains the Spending Clause, pursuant to which Congress possesses the "Power to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. Art. I, § 8, cl. 1.  The authority conferred upon Congress by the Spending Clause includes "the power to require states to comply with federal directives as a condition of receiving federal funds." *Cutter v. Wilkinson*, 423 F.3d 579, 584-85 (6th Cir. 2005) (citing *South Dakota v. Dole*, 483 U.S. 203, 206 (1987)).  Enactment of RLUIPA constitutes "a permissible exercise of Congress's Spending Clause powers." *Cutter*, 423 F.3d at 584-90.  The Attorney General for the State of Michigan has previously conceded that the State of Michigan accepts federal prison funding.  *Porter v. Burnett*, case no. 1:05-cv-562, dkt. #157 at 5 (W.D. Mich.).  Defendant does not presently assert otherwise.  The question, therefore, is whether the State of Michigan, by accepting federal funds, has agreed to waive its sovereign immunity and subject itself to suits for money damages in federal court.

As the Supreme Court recognizes, Congress enjoys "broad power to set the terms on which it disburses federal money to the States." *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291, 296 (2006) (citation omitted).  However, when Congress "attaches conditions" to a State's acceptance of federal funds, any such conditions "must be set out 'unambiguously.'"  This requirement is premised on the notion that because "legislation enacted pursuant to the spending power is much in the nature of a contract. . .to be bound by federally imposed conditions, recipients of federal funds must accept [such conditions] voluntarily and knowingly."  Accordingly, states cannot be held to have accepted conditions of which they are "unaware" or "unable to ascertain." *Id.*

There does not appear to be a consensus presently among the Circuit Courts of Appeal regarding whether acceptance by a State of federal prison funds constitutes a waiver of sovereign immunity as to RLUIPA claims for monetary damages asserted against a State (or State official in his official capacity). Neither the United States Supreme Court nor the Sixth Circuit Court of Appeals appears to have addressed this issue. The Fourth Circuit Court of Appeals has concluded that the States enjoy sovereign immunity as to such claims. *See Madison v. Virginia*, 474 F.3d 118 (4th Cir. 2006). The Third Circuit Court of Appeals, in a brief unpublished decision, has reached the same conclusion. *Scott v. Beard*, 252 Fed. Appx. 491 (3rd Cir., Oct. 30, 2007). The Circuit Court for the District of Columbia has concluded that the States enjoy sovereign immunity from claims for money damages under the analogous Religious Freedom Restoration Act. *See Webman v. Federal Bureau of Prisons*, 441 F.3d 1022 (D.C. Cir. 2006). It appears that the Eleventh Circuit Court of Appeals is the only circuit court that has found that receipt by a State of federal prison funds constitutes a waiver of its sovereign immunity as to RLUIPA claims for monetary damages. As discussed below, the Court finds that the Fourth Circuit's resolution of this question is better reasoned and consistent with relevant Supreme Court authority.

In *Madison v. Virginia*, Ira Madison sued the Commonwealth of Virginia (and various Virginia Department of Corrections officials) alleging, in part, that he was being denied kosher meals in violation of RLUIPA. *Madison*, 474 F.3d at 122-23. The district court concluded that "by accepting federal funds, Virginia had waived its sovereign immunity for RLUIPA damages claims." *Id.* at 123. Virginia requested interlocutory review of this determination and the Fourth Circuit Court of Appeals agreed to hear the matter. *Id.*

After finding that the enactment of RLUIPA represented a valid exercise of congressional spending authority, the court turned to the question of whether Virginia, by accepting federal prison funds, "knowingly consented to damages actions against the State." *Id.* at 123-29. In this respect, the court observed that:

> Although principles of dual sovereignty limit Congress' authority to abrogate State immunity, a State may consent to suit. This "unremarkable" proposition, reflects an exercise, rather than a limitation of, State sovereignty. Thus, a State may waive its immunity by voluntarily participating in a federal spending program provided that Congress has expressed "'a clear intent to condition participation. . .on a State's consent to waive its constitutional immunity.'"
>
> Nevertheless, State sovereign immunity is among the Constitution's most foundational principles and we may not "infer that a State's immunity from suit in the federal courts has been negated. "[T]here can be no consent by implication or by use of ambiguous language." A waiver must be "unequivocally expressed in statutory text." For this reason, general participation in a federal program or the receipt of federal funds is insufficient to waive sovereign immunity. Rather, "Congress must make its intention unmistakably clear in the language of the statute."

*Id.* at 129-30 (internal citations omitted).

RLUIPA expressly provides that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). RLUIPA defines "government" as including: (i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law. 42 U.S.C. § 2000cc-5(4). Considering the clarity of this statutory language, the *Madison* court concluded that

> On its face, RLUIPA thus creates a private cause of action against the State, and Virginia cannot be heard to claim that it was unaware of this

>condition. By voluntarily accepting federal correctional funds, it consented to federal jurisdiction for at least some form of relief.

*Madison*, 474 F.3d at 130 (internal citations omitted).

As the court recognized, however, "a waiver of sovereign immunity for some type of remedy does not necessarily extend to suits for damages." *Id.* at 131 (quoting *Webman*, 441 F.3d at 1025). Accordingly, the court observed that the conclusion that RLUIPA "unambiguously conditions federal prison funds on a State's consent to suit," does not answer the question whether this waiver of sovereign immunity extends to claims for monetary damages. *Id.* at 131.

For a waiver of sovereign immunity to extend to claims for monetary damages, the waiver must "unambiguously" extend to such claims. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also*, *Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Commission*, 453 F.3d 1309, 1315 (11th Cir. 2006); *Webman*, 441 F.3d at 1025; *Cudjoe ex rel. Cudjoe v. Department of Veterans Affairs*, 426 F.3d 241, 247 (3rd Cir. 2005). Any purported waiver of sovereign immunity will be "strictly construed, in terms of its scope, in favor of the sovereign." *Pena*, 518 U.S. at 192; *see also*, *Gomez-Perez v. Potter*, 128 S.Ct. 1931, 1942-43 (2008). Moreover, a court may not resort to legislative history in an attempt to resolve an ambiguity in the statutory language regarding the extent of the waiver of sovereign immunity. *See United States v. Nordic Village*, 503 U.S. 30, 37 (1992) ("the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text" and "[i]f clarity does not exist there, it cannot be supplied by a committee report"); *see also*, *Pena*, 518 U.S. at 192.

Accordingly, if the statutory language in question is susceptible to multiple reasonable interpretations, one of which does not support the inclusion of monetary damages, the waiver of

sovereign immunity cannot be held to extend to claims for monetary damages. *See Nordic Village*, 503 U.S. at 34-37. Relying on these principles, the *Madison* court concluded that

> RLUIPA's "appropriate relief against a government" language falls short of the unequivocal textual expression necessary to waive State immunity from suits for damages. The statute makes no reference to monetary relief - or even to sovereign immunity generally. And, like the Bankruptcy Code provision at issue in *Nordic Village*, "appropriate relief" is "susceptible to more than one interpretation." That is, although "appropriate relief" might be read to include damages in some contexts, the term might be read to preclude them.
>
>     \*     \*     \*
>
> Had Congress wished to effect a State's waiver of Eleventh Amendment sovereign immunity from suit for damages as a consequence of accepting federal funds, it could easily have expressed that intention. In the Civil Rights Act of 1991, 42 U.S.C. § 1981a(1)(2) (2000), for instance, Congress crafted a clear waiver of federal sovereign immunity from monetary relief. The Act provides for federal jurisdiction and permits a "complaining party [to] recover compensatory. . .damages" from, *inter alia*, government actors.
>
> While particular phrasing may not be necessary to waive sovereign immunity for damages, an unequivocal textual waiver of immunity that "extend[s] unambiguously to such monetary claims" is. Thus, the fact that "appropriate relief" is open-ended forecloses any argument that the statute waives immunity for monetary relief.

*Madison*, 474 F.3d at 131-32 (internal citations omitted).

The *Madison* court's resolution of this matter is well-reasoned and consistent with controlling authority.[3] On the other hand, the Eleventh Circuit's decision in *Smith v. Allen*, 502 F.3d 1255 (11th Cir. 2007), is unpersuasive and conflicts with relevant Supreme Court authority.

---

[3] The Court recognizes that much of the authority relied on by the *Madison* court concerned the question of whether Congress had properly waived the sovereign immunity of the United States. The Court finds this of no consequence because as the Supreme Court has observed, "[i]n considering whether the Eleventh Amendment applies. . .cases involving the sovereign immunity of the Federal Government. . .provide guidance, for this Court has recognized a correlation between sovereign immunity principles applicable to States and the Federal Government." *California v. Deep Sea Research, Inc.*, 523 U.S. 491, 506-07 (1998); *see also*, *Madison*, 474 F.3d at 131.

In *Smith*, the court found that RLUIPA created a private cause of action (to obtain "appropriate relief") against a State that accepted federal prison funds. *Smith*, 502 F.3d at 1269. The court, relying on *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992), then stated that "where Congress ha[s] not given any guidance or clear indication of its purpose with respect to remedies, federal courts should presume the availability of all appropriate remedies." *Smith*, 502 F.3d at 1270. The *Smith* court concluded, therefore, that "[i]n light of *Franklin*," the phrase "appropriate relief" as used in RLUIPA "is broad enough to encompass the right to monetary damages." *Smith*, 502 F.3d at 1270.

In *Franklin*, a female high school student asserted an action for monetary damages under Title IX of the Education Amendments of 1972. *Franklin*, 503 U.S. at 62-63. The district court dismissed the claim on the grounds that "Title IX does not authorize an award of damages," a determination which was affirmed by the Eleventh Circuit Court of Appeals. *Id.* at 64. The Supreme Court agreed to hear the matter to resolve the question "whether the implied right of action under Title IX. . .supports a claim for money damages." *Id.* at 62-63. In this respect, the Court observed:

> In *Cannon v. University of Chicago,* 441 U.S. 677, (1979), the Court held that Title IX is enforceable through an implied right of action. We have no occasion here to reconsider that decision. Rather, in this case we must decide what remedies are available in a suit brought pursuant to this implied right. As we have often stated, the question of what remedies are available under a statute that provides a private right of action is "analytically distinct" from the issue of whether such a right exists in the first place. Thus, although we examine the text and history of a statute to determine whether Congress intended to create a right of action, we presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise.

*Franklin*, 503 U.S. at 65-66 (internal citations omitted).

Finding that Congress had "made no effort to restrict the right of action recognized in *Cannon*. . .or to alter the traditional presumption in favor of any appropriate relief for violation of a

federal right," the *Franklin* Court concluded that "a damages remedy is available for an action brought to enforce Title IX." *Id.* at 66-76.  Relying on this analysis, the *Smith* court concluded that:

> In light of *Franklin* and its progeny, we agree that the use of the phrase "appropriate relief" in section 3 of RLUIPA. . .is broad enough to encompass the right to monetary damages in the event a plaintiff establishes a violation of the statute.  Congress expressed no intent to the contrary within RLUIPA, even though it could have, by, for example, explicitly limiting the remedies [therein] to injunctive relief only.  Instead, Congress used broad, general language in crafting the remedies section of RLUIPA, stating that a prevailing party could obtain "appropriate relief."  We assume that, when Congress acted, it was aware of Franklin's presumption in favor of making all appropriate remedies available to the prevailing party.  In light of that presumption, we conclude that, absent an intent to the contrary, the phrase "appropriate relief" in RLUIPA encompasses monetary as well as injunctive relief.

*Smith*, 502 F.3d at 1270-71 (internal citations omitted).

The *Smith* court's reliance on *Franklin* is misplaced.  As the Supreme Court subsequently recognized:

> Because the private right of action under Title IX is judicially implied, we have a measure of latitude to shape a sensible remedial scheme that best comports with the statute.  That endeavor inherently entails a degree of speculation, since it addresses an issue on which Congress has not specifically spoken.

*Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 284 (1998) (internal citations omitted).

In short, the *Franklin* Court was engaged in the admittedly speculative task of attempting to define the remedies available in an implied right of action.  The right to assert a private cause of action under RLUIPA is not an implied right of action, but is instead a right expressly articulated in the statute.  Moreover, the *Franklin* Court was not faced with a claim of sovereign immunity.  As discussed previously, courts cannot infer that a State has waived its sovereign immunity.  Instead, a finding that a State has waived its sovereign immunity must be based on unequivocal statutory language which

makes Congress' intent unmistakably clear. While it may be appropriate for a court to engage in speculation to identify presumed remedies in an implied cause of action, such speculation and presumption is utterly inappropriate when evaluating a claim of sovereign immunity. The Supreme Court has recognized this, observing that:

> sovereign immunity prohibits wholesale application of *Franklin* to actions against the Government. . .where a cause of action is authorized against the federal government, the available remedies are not those that are "appropriate," but *only* those for which sovereign immunity has been *expressly waived*.

*Pena*, 518 U.S. at 196-97 (emphasis added).

With respect to this issue, several other courts have found persuasive the reasoning articulated by the Fourth Circuit in *Madison v. Virginia*. *See*, *e.g.*, *Sharp v. Johnson*, 2008 WL 941686 (W.D. Pa., Apr. 7, 2008); *Gibb v. Crain*, 2008 WL 744249 (E.D. Tex., Mar. 19, 2008); *Cardinal v. Metrish*, 2008 WL 696479 (W.D. Mich., Mar. 13, 2008); *Bock v. Gold*, 2008 WL 345890 (D.Vt., Feb. 7, 2008); *Toler v. Leopold*, 2007 WL 2907889 (E.D. Mo., Oct. 1, 2007).

For the reasons articulated herein, the undersigned is persuaded by the Fourth Circuit's analysis and is likewise not persuaded by the Eleventh Circuit's decision in *Smith v. Allen*. Accordingly, the Court recommends that to the extent that Plaintiff seeks to recover monetary damages under RLUIPA against Defendants Burnett and Duby in their official capacity, such claims must be dismissed on the ground that such are barred by the Eleventh Amendment to the United States Constitution.

B.    Personal Capacity

As noted above, legislation enacted by Congress pursuant to its authority under the Spending Clause is "much in the nature of a contract." *Arlington*, 548 U.S. at 296. As a result, "when

Congress attaches conditions to the award of federal funds under its spending power" courts must "examine closely the propriety of private actions holding the recipient liable in monetary damages for noncompliance with the condition." *Gebser*, 524 U.S. 287.  In this respect, the "central concern" is that "the receiving entity of federal funds [has] notice that it will be liable for a monetary award." *Id.*

Recovery of money damages for violation of legislation enacted by Congress pursuant to its Spending Clause power is limited.  For example, as is recognized, Title IX was enacted pursuant to Congress' spending power. *See Horner v. Kentucky High School Athletic Ass'n*, 206 F.3d 685, 700 (6th Cir. 2000) (citations omitted).  With respect to Title IX claims, the Supreme Court has held that "[t]he Government's enforcement power may only be exercised against the funding recipient. . .and we have not extended damages liability under Title IX to parties outside the scope of this power." *Davis Next Friend LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629, 641 (1999).  The Court discerns no rationale for interpreting RLUIPA, likewise enacted pursuant to Congress' spending power, any differently.  In the RLUIPA context the recipient of federal prison funds (i.e., the "contracting party") is the State, not its individual employees or representatives. *See Smith*, 502 F.3d at 1274-75.

In sum, neither Defendant Burnett nor Defendant Duby is a recipient of federal prison funds and as previously noted, RLUIPA does not provide for the recovery of monetary damages.  Thus, Defendants could not have been aware that violation of RLUIPA would subject them to a claim for monetary damages in their personal capacity.  Accordingly, the Court recommends that Plaintiff is barred from recovering monetary damages against Defendant Burnett or Defendant Duby in their personal capacity for their alleged violation of RLUIPA. *See, e.g., Smith*, 502 F.3d at 1271-75 ("RLUIPA - a provision that derives from Congress' Spending Power - cannot be construed as creating a private action

against individual defendants for monetary damages); *Sharp v. Johnson*, 2008 WL 941686 (W.D. Pa., Apr. 7, 2008) (same).

In sum, the Court recommends that Plaintiff's RLUIPA claims for monetary damages be dismissed for the reasons discussed above.

**III.       First Amendment**

To the extent that Plaintiff seeks monetary damages against Defendants in their official capacity for violation of his First Amendment rights, such are precluded by the Eleventh Amendment as discussed above. As for Plaintiff's claims for monetary damages against Defendants Burnett and Duby in their personal capacity, the Court recommends that Defendants' motion for summary judgment be denied.

On December 8, 2007, Plaintiff completed a questionnaire regarding his request to participate in the strict vegetarian diet. (Dkt. #14, Exhibit B). In his responses, Plaintiff stated that participation in the strict vegetarian diet was "required" by his religion and that his religious beliefs did not allow him to consume "any food that comes from an animal, bird, or fish," including "any by-products of that animal, bird, or fish." Despite such express and unambiguous statements concerning his religious beliefs, Defendant Duby recommended to Defendant Burnett that Plaintiff's request to participate in the strict vegetarian diet be denied because Plaintiff "did not seem very sincere about his faith." *Id.* Defendant Burnett relied on Defendant Duby's recommendation in denying Plaintiff's request. (Dkt. #14, Exhibit C). In response to Defendants' motion, Plaintiff has submitted an affidavit in which he again asserts that his religious beliefs do not allow him to consume "any animals or any animal products or derivatives." (Dkt. #22). Plaintiff has also submitted exhibits indicating that his

religious beliefs require that he participate in a "strict vegetarian" diet. (Dkt. #21, Exhibits X-Z). Plaintiff has also submitted numerous exhibits which tend to demonstrate that his religious beliefs are sincere. (Dkt. #21, Exhibits D-T).

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) the Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also*, *Bakr v. Johnson*, 1997 WL 428903 at *2 (6th Cir., July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials"); *Barhite v. Caruso*, 2009 WL 440682 at *2 (W.D. Mich., Feb. 23, 2009). Even if Defendants' actions are found to violate Plaintiff's First Amendment right to freely practice his religion, Defendants are nonetheless entitled to summary judgment if they establish that their actions were reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 84-91 (1987).

Defendants assert that they are entitled to summary judgment because "Plaintiff has made no showing that a strict vegetarian diet is central or indispensable to the practice of Buddhism." (Dkt. #14 at 4-6). While a reasonable juror could perhaps conclude that such is the case, the evidence of record more than supports the conclusion that Plaintiff's religious beliefs are sincerely (and intensely) held. Resolution of this particular question constitutes, therefore, a genuine factual dispute which must be resolved at trial. *See Bakr*, 1997 WL 428903 at *2 ("a decision on whether a particular religious belief is sincerely held cannot generally be made in advance of a hearing allowing for the presentation

of testimony"); *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 699 (1989) ("[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds").

Defendants also assert that they are entitled to summary judgment because the denial of Plaintiff's request to participate in the strict vegetarian diet was "reasonably related to a legitimate governmental interest." Specifically, Defendant Burnett asserts in an affidavit that:

> The strict vegetarian menu is reserved for those whose faith of preference requires eating from a strict vegetarian menu. The strict vegetarian menu is very costly compared to the non-meat menu. The non-meat menu is available at all MDOC prisons.

(Dkt. #14, Exhibit C).

This statement hardly constitutes a sufficient basis to grant the relief Defendants seek. First, as discussed above, there is a legitimate fact question as to whether Plaintiff's religious beliefs require that he participate in a strict vegetarian diet. As for the allegation that the strict vegetarian menu is more expensive, the Court is not persuaded. This rationale might be relevant if the MDOC had made the determination that it would not provide a strict vegetarian diet to *any* prisoner. Instead, the MDOC has made the decision to offer such a diet to those prisoners whose religious beliefs compel participation in such. Having made this determination, Defendants cannot determine participation in the strict vegetarian diet in a manner that violates the First Amendment, a question about which there exists a genuine factual dispute.

More importantly, even if the cost of the strict vegetarian menu were a relevant consideration, Defendant Burnett's affidavit is insufficient to merit summary judgment. Defendant Burnett has presented no evidence that he works in food services or otherwise possesses *firsthand* knowledge concerning the costs to provide the strict vegetarian menu or the non-meat menu. In the

absence of such evidence, the statement in question constitutes hearsay which the Court cannot consider on summary judgment. *See North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997) (the only evidence that the Court can consider on a motion for summary judgment is evidence that would be admissible at trial). Thus, Defendants have failed to establish that their actions were motivated by a legitimate governmental interest.

Accordingly, for the reasons articulated herein, the Court recommends that Defendants are entitled to summary judgment as to Plaintiff's claims for monetary damages against Defendants in their official capacity for violation of his First Amendment rights. However, with respect to Plaintiff's claims for monetary damages against Defendants in their personal capacity for violation of his First Amendment rights, the Court recommends that Defendants are not entitled to summary judgment. The Court further recommends that Defendants are not entitled to qualified immunity as to this latter claim, as a reasonable person would have clearly understood that Plaintiff's allegations state a claim for violation of the First Amendment. *See, e.g., Kent v. Johnson*, 821 F.2d 1220 (6th Cir. 1987); *Turner v. Safley*, 482 U.S. 78 (1987).

## **CONCLUSION**

For the reasons articulated herein, the Court recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #13), be **granted in part and denied in part**. Specifically, the Court recommends that Defendants are entitled to summary judgment as to all Plaintiff's claims, save his claims against Defendant Burnett and Defendant Duby in their personal capacity for monetary damages for violation of his First Amendment rights.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                  Respectfully submitted,

Date:  April 6, 2009                                    /s/ Ellen S. Carmody
                                                              ELLEN S. CARMODY
                                                              United States Magistrate Judge